UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CARLTON WRIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:24-cv-00366-JPH-KMB |
| | ) | |
| STORM, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Carlton Wright, an inmate in the Indiana Department of Correction, brings this lawsuit against correctional staff at New Castle Correctional Facility ("NCCF"), alleging that they retaliated against him, violated his equal protection rights, and subjected him to unconstitutional conditions of confinement when he was incarcerated there. The defendants have moved for summary judgment. Dkt. [38]. For the reasons below, that motion is **GRANTED**.

## I.
## Summary Judgment Standard

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-

finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.
## Factual Background[1]

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to the non-

[1] Defendants object to much of the evidence Mr. Wright designated. Mr. Wright's affidavit, dkt. 54-1 at 67-82, and his complaint, dkt. 2, are sworn under penalties for perjury, so the Court considers them. Mr. Wright also cites exhibits and describes them sufficiently, and while defendants point out that those exhibits appear altered by Mr. Wright's handwriting, those alterations are intended simply to point the Court to the portions of the exhibit Mr. Wright relies on. The Court therefore declines to disregard the exhibits. *See Modrowski v. Pigatto*, 712 F.3d 1166, 1169 (7th Cir. 2013) ("[L]itigants have no right to demand strict enforcement of local rules by district judges."). To the extent that Mr. Wright makes statements that are not supported by designated evidence, however, those statements are disregarded. *See Gross v. Town of Cicero*, 619 F.3d 697, 702 (7th Cir. 2010).

moving party and draws all reasonable inferences in that party's favor. *Khungar*, 985 F.3d at 572–73.

**A. The Parties**

During the relevant time, Mr. Wright was an inmate at NCCF. Dkt. 2. He was placed in segregation at NCCF on February 14, 2022. *Id.* at 7.

Lt. Storms worked as a lieutenant at NCCF. Dkt. 40-2 at 1. Mr. Nemore worked as a counselor at NCCF. Dkt. 40-3 at 1. Jennifer French was the Facility Administrator. Dkt. 40-6 at 1. Sammy Joseph was a Lead Investigator. Dkt. 40-7 at 1. Major Davis was Chief of Security. Dkt. 40-8 at 1. Mark Sevier was the Facility Administrator, dkt. 40-9 at 1, and Ms. Cecil was the supervisor of Classification, dkt. 40-10 at 1. Mekesha Page was a Unit Team Manager. Dkt. 40-11 at 1.

**B. Mr. Wright's Grievances**

Mr. Wright filed more than 10 grievances in less than a year before the incidents at issue. Dkt. 54-1 at 10-11. He also helped other inmates with their grievances. *See* dkt. 2 at 21.

All Defendants deny knowledge of Mr. Wright's grievances. Dkt. 40-2 at 8 (Storms); dkt. 40-3 at 8 (Nemore); dkt. 40-6 at 8 (French); dkt. 40-7 at 8 (Joseph); dkt. 40-8 at 8 (Davis); dkt. 40-9 at 8 (Sevier); dkt. 40-10 at 7 (Cecil); dkt. 40-11 at 8 (Page). Mr. Wright designates evidence, however, that his lawyer sent letters to Warden Sevier, copying Ms. French, discussing his concerns, and that he wrote a letter to Ms. French about his grievances. Dkt. 54-1 at 3-4, 14-17; 19-32. He also designates letters he wrote to Ms. Cecil about a request for a

separatee against Officer Dunn, who is not a party to this case. Dkt. 54-1 at 34-37.[2] Mr. Wright also filed a grievance naming Mr. Joseph and Major Davis. Dkt. 53-1 at 60-66.

**C. The "Care Package"**

When he was transferred to segregation,[3] Mr. Wright was not allowed to take any of his personal property except his tablet, earphones, and headphones. Dkt. 54-1 at 72, ¶ 18. He was not provided any property except a mattress, a jump suit, a dirty sheet, a roll of toilet paper, and a dirty blanket. *Id.* ¶ 19. For his first eight days in segregation, he did not have any soap, deodorant, shampoo, toothbrush, or toothpaste. *Id.* ¶ 20. He also had no change of socks, boxers, towels, or t-shirts. *Id.* He was therefore unable to shower or change his clothes during this time and he developed a rash. *Id.* at 73, ¶ 21-23. Lt. Storms and Mr. Nemore are responsible for providing inmates moved to this unit with a "care package" including new sheets, blankets, towels, socks, boxers, t-shirts, laundry bag, shower shoes, toothpaste, toothbrush, soap, deodorant, a razor, and shampoo. *Id.* at 75 ¶ 29.[4]

Mr. Wright requested a care package from Lt. Storms and Mr. Nemore, but they refused to provide him with one. Dkt. 54-1 at 75-76 ¶ 32-33. He further

---

[2] Mr. Wright also contends that he submitted grievances against Ms. Cecil's family members, but he doesn't designate evidence to show that he is personally aware that these individuals are related to Ms. Cecil. Dkt. 53 at 24.

[3] Mr. Wright consistently refers to this placement in segregation as being "on the hill." The parties dispute whether Mr. Wright was placed there for disciplinary or administrative reasons, but this dispute is not material.

[4] Lt. Storms and Mr. Nemore have designated contrary evidence that they are not responsible for providing "care packages." Dkt. 40-4 at 5-6, 18-19.

attests that every other inmate who was transferred to segregation received a "care package" or their own personal property, *id.* at 76 ¶ 34, but Mr. Wright has not demonstrated his personal knowledge of this fact.[5] Mr. Wright was provided a "care package" on February 22, 2022. *Id.* at 74 ¶ 25–26.

**C. Hard Cell**

On February 22, 2022, Mr. Wright alleges he was moved from a furnished cell to a "hard cell," where he spent 44 days. Dkt. 2 at 19-23. He alleges that he was placed there because he helped other inmates navigate the grievance process. *Id.* While Defendants designate evidence that this cell was furnished with a bunk, shelves, breakaway hooks, and a toilet/sink combination, dkt. 40-2 at 5, Mr. Wright's designated evidence is that the cell had only a bed and a toilet/sink combo. Dkt. 2 at 20.

## III.
## Discussion

**A. Conditions of Confinement**

Mr. Wright claims that he was denied a "care package" and placed in a "hard cell" in violation of his Eighth Amendment rights. Under the Eighth Amendment, "prisoners cannot be confined in inhumane conditions." *Thomas v. Blackard*, 2 F.4th 716, 720 (7th Cir. 2021) (citing *Farmer v. Brennan*, 511 U.S.

[5] Rule 56(c)(4) of the Federal Rules of Civil Procedure provides that affidavits in support of a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." "'[A]lthough personal knowledge may include reasonable inferences, those inferences must be grounded in observation or other first-hand personal experience." *Weaver v. Speedway*, LLC, 28 F.4th 816, 825 (7th Cir. 2022); *see* Fed. R. Evid. 602.

825, 832 (1994)). A conditions-of-confinement claim includes both an objective and subjective component. *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019). First, there must be "an objective showing that the conditions are sufficiently serious—*i.e.*, that they deny the inmate 'the minimal civilized measure of life's necessities,'" *Isby v. Brown*, 856 F.3d 508, 521 (7th Cir. 2017) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Second, there must be "a subjective showing of a defendant's culpable state of mind." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

**1. "Care Package"**

This claim is proceeding against only Lt. Storms and Mr. Nemore, dkt. 14 at 4, who argue that denying Mr. Wright clean clothes and hygiene supplies for about eight days did not violate the Eighth Amendment, dkt. 39 at 12–15. "To prevail on his Eighth Amendment claim, [Mr. Wright] must show . . . conditions which denied him the minimal civilized measure of life's necessities." *Gillis v. Litscher*, 468 F.3d 488, 491 (7th Cir. 2006).

While Mr. Wright undoubtedly endured unpleasant conditions because he did not receive a care package upon his transfer, the deprivation of personal hygiene materials for eight days does not violate the Eighth Amendment. *See Board v. Farnham*, 394 F.3d 469, 482 (7th Cir. 2005) ("[W]e have held that the denial of toothpaste for ten days is not sufficient to state an Eighth Amendment claim."); *Walker v. Dart*, 2010 WL 669448, at *4 (N.D. Ill. 2010) ("Being denied clean clothes for two weeks, though unpleasant, is not a deprivation serious enough to support an Eighth Amendment claim."). The Seventh Circuit

has accordingly held that a five-day stay in a filthy cell, coupled with ten days without soap, toothpaste, or toothbrush, did not violate the Eighth Amendment. *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988); *see Harris v. Jones*, No. 20-1625, 2021 WL 4950248 at *2 (7th Cir. Oct. 25, 2021).

On these facts, the denial of clean clothes or hygiene supplies for eight days, without evidence of other aggravating conditions, did not violate Mr. Wright's Eighth Amendment rights. *See Gillis*, 468 F.3d at 493 (Eighth Amendment deliberate indifference is "a fact-intensive inquiry" and "[s]ome conditions of confinement may establish . . . a violation in combination when each alone would not do so.").[6] Lt. Storms and Mr. Nemore are therefore entitled to summary judgment on this claim.

**2. "Hard Cell"**

Defendants argue that even if Mr. Wright had only a bunk and a toilet/sink in the "hard cell," that would not violate the Eighth Amendment. Mr. Wright designates evidence that his cell was sparsely furnished, but that alone does not allow a conclusion that he was deprived of the "minimal civilized measure of life's necessities." *Gillis*, 468 F.3d at 491, 493. Defendants are therefore entitled to summary judgment on this claim. *See Isby v. Brown*, 856 F.3d 508, 522 (7th Cir. 2017) (affirming summary judgment on Eighth Amendment claim based on

---

[6] Mr. Wright received his property the same day he was transferred to the "hard cell," dkt. 54-1 at 74, and had his hygiene items in the hard cell, *id.* at 77, so the Court need not decide whether a lack of furniture could meaningfully increase the hardship from the delayed care package. *See Isby v. Brown*, 856 F.3d 508, 522 (7th Cir. 2017) (conditions can together show an Eighth Amendment violation when they would not individually "only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable, human need").

complaints "relating to the lighting, food, temperatures, sleeping arrangements, the restricted time for showers and exercise, and so forth"); *Barbosa v. McCann*, No. 08 C 5012, 2009 WL 2913488, at *4 (N.D. Ill. Sept. 8, 2009) (dismissing Eighth Amendment claim based on lack of a stool, storage for shower gear, and a ladder).

**B. Retaliation**

Mr. Wright contends that he was denied a "care package" and placed in a "hard cell" because he filed grievances and helped other inmates file grievances. To succeed on a First Amendment retaliation claim, Mr. Wright must provide evidence sufficient to allow a reasonable jury to conclude that: (1) he engaged in protected First Amendment activity; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) the protected activity was a motivating factor in the defendants' decision to take the allegedly retaliatory action. *Taylor v. Van Lanen*, 27 F.4th 1280, 1284 (7th Cir. 2022). If he does so, the burden shifts to Defendants to show that the deprivation would have occurred even if he had not engaged in protected activity. *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). If they can make that showing, the burden shifts back to Mr. Wright to demonstrate that the proffered reason is pretextual or dishonest. *Id.*

Defendants do not dispute that Mr. Wright engaged in protected First Amendment activity by filing grievances. They instead argue that Mr. Wright has not designated evidence to support a conclusion that any of their actions were motivated by Mr. Wright's grievances. Dkt. 39 at 19.

"The motivating factor [element] amounts to a causal link between the activity and the unlawful retaliation." *Manuel*, 966 F.3d at 680. This element may be proven by circumstantial evidence, which may include suspicious timing; ambiguous statements, behavior, or comments directed at others in the protected group; evidence that similarly situated people were treated differently; and evidence that the decisionmaker offered a pretextual reason for an allegedly retaliatory action. *Id.*; *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 643–44 (7th Cir. 2013). Nonetheless, "[a]llegedly protected speech cannot be proven to motivate retaliation, if there is no evidence that the defendants knew of the protected speech." *Stagman v. Ryan*, 176 F.3d 986, 999–1000 (7th Cir. 1999).

**1. "Care Package"**

Mr. Wright alleges that Lt. Storms and Mr. Nemore retaliated against him by denying him a "care package." Lt. Storms and Mr. Nemore argue they did not know about Mr. Wright's grievances, his assistance to other inmates with filing grievances, or his complaints about prison staff. In response, Mr. Wright designates several letters his lawyer sent to Warden Sevier and non-party Jack Hendrix about his issues at NCCF. Dkt. 54-1 at 3-8. But these letters are not addressed to either Lt. Storms or Mr. Nemore and there is no designated evidence that they received them or were otherwise aware of them. *See Stagman*, 176 F.3d at 999–1000.

Mr. Wright also argues that, on one occasion when he was giving advice to other inmates about filing grievances, Lt. Storms "came over the speaker inside the Plaintiff's cell and commented about it in a negative way." Dkt. 53 at 9. But

even if that is supported by designated evidence, Mr. Wright's verified complaint indicates that he was "*previously* deprived of his care package" before that event, dkt. 2 at 21–22 (emphasis added), so it cannot show a triable issue of fact. *See Leitgen v. Franciscan Skemp Healthcare, Inc.*, 630 F.3d 668, 676 (7th Cir. 2011) (A retaliation claim "based on suspicious timing . . . doesn't work if the retaliatory act precedes the protected activity.").

Mr. Wright therefore has not designated evidence showing a triable issue of fact about whether either Lt. Storms or Mr. Nemore denied him a care package for retaliatory reasons.

**2. "Hard Cell"**

Defendants argue that Mr. Wright cannot show that he was placed in a "hard cell" because of his grievance activities. Dkt. 39 at 20.

Defendants each deny knowledge of Mr. Wright's grievances. Dkt. 40-2 at 8 (Storms); dkt. 40-3 at 8 (Nemore); dkt. 40-6 at 8 (French); dkt. 40-7 at 8 (Joseph); dkt. 40-8 at 8 (Davis); dkt. 40-9 at 8 (Sevier); dkt. 40-10 at 7 (Cecil); dkt. 40-11 at 8 (Page). Mr. Wright argues that Mr. Nemore, Major Davis, Mr. Joseph, and Unit Team Manager Page[7] knew about his grievances because (1) he filed grievances against them, (2) they held "high positions" at NCCF that would "be privy about the Plaintiff," (3) he filed so many grievances, or (4) he helped other inmates with grievances. *See* dkt. 54-1 at 9-10, 41–43, 59–66.

[7] Mr. Wright contends that Defendant Page was his Unit Team Manager and was therefore aware of "all the many problems that the Plaintiff was encountering and experiencing at NCCF." Dkt. 53 at 58. But knowledge of issues does not show knowledge of grievances about those issues.

These conclusory and speculative allegations are not enough to allow a jury to conclude that any of those Defendants knew about his grievances. *See Whitaker v. Dempsey*, 144 F.4th 908, 920 (7th Cir. 2025) ("[The plaintiff] is entitled to all reasonable inferences in his favor, but mere speculation or conjecture cannot defeat summary judgment."). These Defendants are therefore entitled to summary judgment. *Lesiv v. Ill. C. R.R. Co.*, 39 F.4th 903, 915 (7th Cir. 2022) ("Knowledge of the protected activity is necessary to show causation for a retaliation claim.").

Regardless, for all Defendants, even if some of them knew about Mr. Wright's grievances, the designated evidence does not allow a reasonable jury to find that any Defendant was motivated by those grievances when Mr. Wright was moved to the "hard cell." Mr. Wright does not allege that his initial move to segregation was retaliatory. And the grievances and letters pertaining to the Defendants that Mr. Wright designates are from before that initial move, rather than from between his February 14, 2022 move to segregation and his February 22 move to the "hard cell." *See* dkt. 54-1 at 3–5, 14–39, 41–43, 57–66 (grievances and letters from March 2021 through January 2022). Even if the grievances were filed close in time to the move to the "hard cell," "[s]uspicious timing alone will rarely be sufficient to create a triable issue because suspicious timing may be just that—suspicious—and a suspicion is not enough to get past a motion for summary judgment." *Manuel*, 966 F.3d at 680–81 (cleaned up). Mr. Wright has not designated any other evidence to support an inference of a retaliatory motive.

Finally, Mr. Wright contends that while he was in segregation, he was helping other inmates with their grievances and that "once defendant Lieutenant Storm[s] . . . became aware that the Plaintiff was helping other inmates . . . the plaintiff was then abruptly moved to" another segregation unit, "the 'special management' unit." Dkt. 2 at 21. This allegation is also too conclusory to support a reasonable inference that Lt. Storms acted with a retaliatory motive. While Mr. Wright states that the move was "abrupt," he provides no other detail about the timing of this move or designated evidence connecting it to grievances. *Daugherty v. Page*, 906 F.3d 606, 611 (7th Cir. 2018) ("Summary judgment is not a time to be coy: conclusory statements not grounded in specific facts are not enough.").

Mr. Wright has not designated any evidence beyond arguably suspicious timing to support an inference of a retaliatory motive. *See Manuel*, 966 F.3d at 681 (suspicious timing alone is not enough to meet plaintiff's requirement "to furnish evidence that would allow a reasonable jury to find that his protected speech was at least a motivating factor" for the alleged adverse action). Defendants are therefore entitled to summary judgment on this claim.

**C. Equal Protection**

Mr. Wright bases his equal protection claim on a class-of-one theory. Dkt. 53 at 72. "A plaintiff alleging a class-of-one-equal-protection claim must establish that (1) a state actor has intentionally treated him differently than others similarly situated, and (2) there is no rational basis for the difference in treatment." *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010).

Defendants argue that Mr. Wright cannot show that the defendants treated him differently than any other similarly-situated inmates. Dkt. 39 at 16. In response, Mr. Wright argues that he was treated differently than similarly-situated inmates when he was denied a "care package" and placed in a "hard cell." Dkt. 53 at 72–76. But he does not identify any inmates who were situated similarly to him and received better treatment and does not designate any specific evidence to support this claim. Mr. Wright's general conclusions about how he was treated compared to other inmates is not enough for a reasonable jury to find that Defendants treated him differently from similar inmates with no rational basis. *See Brown v. Chicago Transit Auth.*, 179 F.4th 577, 586 (7th Cir. 2026) ("Properly substantiating assertions is a basic legal obligation. Doing so takes on a particular form and importance for the plaintiff at summary judgment. . . . As part of this inquiry, Brown had the burden to designate specific facts showing that there is a genuine issue for trial."). Defendants are therefore entitled to summary judgment on this claim.

**IV.**
**Conclusion**

The defendants' motion for summary judgment is **granted**. Dkt. [38]. Final judgment consistent with this Order shall now issue.

**SO ORDERED.**

Date: 9/29/2026

James Patrick Hanlon

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

CARLTON WRIGHT
208902
WESTVILLE - CF
WESTVILLE CORRECTIONAL FACILITY
Inmate Mail/Parcels
5501 South 1100 West
WESTVILLE, IN 46391

Joseph Thomas Lipps
BBFCS ATTORNEYS
jlipps@bbfcslaw.com